IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTER WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-1307-G |
| | § | |
| CHASE HOME FINANCE, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court is *Defendants Chase Home Finance, LLC and Deutsche Bank National Trust's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted*, filed April 5, 2013 (doc. 5). Based on the relevant filings and applicable law, the motion should be **GRANTED.**

## I. BACKGROUND

This case involves the foreclosure of real property located at 245 Creekwood Drive, Lancaster, Texas 75146 (the Property). (Orig. Compl. (doc. 1-5) at 2.)[1] On January 22, 2013, Ester Williams (Plaintiff) filed this *pro se* action in state court against Chase Home Finance, LLC (Chase) and Deutsche Bank National Trust, as Trustee for Long Beach Mortgage Loan Trust 2004-5 (Deutsche), for claims arising from the foreclosure of the Property. (*Id.* at 1–5.)

Plaintiff alleges that she purchased the Property on June 22, 2004, for $257,000.00. (Amend. Compl. (doc. 1-8) at 2.) She obtained a loan from Long Beach Mortgage (LBM) for $205,600.00

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(the primary loan) to cover 80 percent of the purchase price, and executed an "adjustable rate" promissory note and a deed of trust granting a first lien on the Property in LBM's favor. (*Id.* at 2, 11, 24–28, 40.) She borrowed $51,400.00 from the sellers to cover the remaining 20 percent (the secondary loan), and signed another promissory note and "warranty deed" granting a "second and inferior vendor's lien" on the Property in their favor. (*Id.* at 2, 11, 20.)

In 2008, the "mortgage company"[2] allegedly increased the interest rate on the primary loan from 7 to 9 percent without giving her "prior, written notification." (*Id.*) "Because of such a rapid and high jump in the interest rate, Plaintiff fell behind on her payments." (*Id.*) She contacted Chase to request "loan counseling" and a "modification." (*Id.* at 3.) On February 4, 2008, Chase denied her eligibility for its "loss mitigation program," explaining that it was "unable to obtain clear title to the Property." (*Id.* at 29.)

On October 6, 2009, the substitute trustee sold the Property to Deutsche at a foreclosure sale for $127,100.00. (*Id.* at 40.) "Defendants" brought a subsequent forcible detainer action against her. (*Id.* at 3.) She sued them for "wrongful foreclosure" and obtained a Temporary Restraining Order (TRO) enjoining her eviction. (*Id.*) Her suit was "dismissed without prejudice" for failure to comply with a court order. (*Id.* at 3, 31.) Between September 2011 and February 2012, she made payments of $800 "to the court" for Deutsche's benefit. (*Id.* at 3, 32–37.) On January 10, 2013, the Dallas County Sheriff served her with a notice to vacate the Property. (*Id.* at 3, 38.)

---

[2]  The complaint states that "Washington Mutual" (WM), Chase's predecessor, was the "mortgage company" during the time that the events giving rise to Plaintiff's claims occurred. (*See* doc. 1-8 at 2.) Given Chase's status as WM's successor, Plaintiff's allegations against WM are considered as if they were asserted against Chase. *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *1 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) ("Because BOA is BAC's successor by merger, the court will consider BAC's conduct as if it were BOA's in addressing [the plaintiff's] claims."); *see also* Tex. Bus. Orgs. Code Ann. § 10.008(a) (3), (5) (West 2011) (providing that "all liabilities and obligations" of the merged entity "are allocated to . . . the surviving" entity, and any proceedings pending against the merged entity "may be continued as if the merger did not occur").

-2-

Plaintiff lists claims for violations of the Texas Debt Collection Practices Act (TDCPA) and the Deceptive Trade Practices Act (DTPA), unreasonable collection efforts, "gross negligence," suit to quiet title, and trespass to try title. (*Id.* at 4–7.) Liberally construed, the complaint also asserts claims under the Truth in Lending Act (TILA) and Regulation Z, its implementing regulation, and the Real Estate Settlement Procedures Act (RESPA). (*Id.* at 5.) Plaintiff seeks damages, attorney's fees, court costs, declaratory judgment, and injunctive relief to restrain Defendants from evicting her from the Property. (*Id.* at 4–9.)

On March 29, 2013, Defendants removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1 at 2–3.) They moved to dismiss Plaintiff's complaint a few days later. (doc. 5.) With a timely-filed response and reply, the motion is now ripe for recommendation.

## II. MOTION TO DISMISS

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 5.)

## A. Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless,

regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Plaintiff has attached to her complaint copies of what appear to be a "loan settlement statement" signed at loan closing on June 22, 2004, correspondence between Plaintiff and the sellers, the warranty deed she signed in the sellers' favor, the adjustable rate note she signed in LBM's favor, Chase's letter denying her eligibility for its loss mitigation program, news articles, and five receipts from the state court for payments she made for Deutsche's account. (doc. 1-8 at 11–37.) Because these documents are attached to Plaintiff's complaint, they are considered part of the pleadings. *See Collins*, 224 F.3d at 498.

**B.    TDCPA[3]**

Defendants first seek dismissal of Plaintiff's claims under the TDCPA on grounds that the claims are time-barred.[4]  (doc. 5 at 4.)

---

[3]  Although Plaintiff also lists the Texas Consumer Credit Code in the title of this claim, her substantive allegations implicate only the TDCPA. (*See* doc. 1-8 at 4.)

[4]  Defendants also argue that Plaintiff's claims are factually unsupported. (doc. 5 at 4.) Because the statute of limitations issue is dispositive, it is not necessary to address this argument.

Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at \*4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing, or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at \*4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012) (citations omitted). "The statute of limitations for a [TDCPA] claim is two years." *Laali v. IndyMac Mortgage Servs.*, No. 4:12-CV-432, 2013 WL 4456680, at \*13 (E.D. Tex. Aug. 16, 2013) (citing *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 872 (Tex. App.—Corpus Christi 1998, pet. denied)); *see also* Tex. Civ. Prac. & Rem. Code § 16.003(a) (providing a 2-year statute of limitations for numerous causes of action).

Plaintiff alleges that in 2008, Chase increased the interest rate on her primary loan from 7 to 9 without giving her prior notification, and that she fell behind on her payments as a result of the increase.  (doc. 1-8 at 2–3.)  She essentially claims "Defendants" violated § 392.304(a)(8) by misrepresenting the amount owed on the note and violated § 392.303(a)(2) by charging her an "excessive" interest rate without giving her notice in violation of the note's terms.[5]  (*Id.* at 5.)

---

[5]  While Plaintiff expressly lists §§ 392.304(a)(10), 392.303(a)(2), and 392.301(a)(8), her allegations of misrepresentation and excessive interest actually implicate §§ 392.303(a)(2) and 392.304(a)(8).  (*See* doc. 1-8 at 5.) During debt collection, or in obtaining information concerning a consumer,  § 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest, or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the customer." Tex. Fin. Code § 392.303(a)(2) (West 2004).  In turn, § 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt." *Id.* § 392.304(a)(8).

Moreover, Chase allegedly denied her application for loan counseling and a modification without giving her a valid explanation.  (*Id.*)  Chase's letter denying her eligibility for its "loss mitigation program" is dated February 4, 2008.  (*See id.* at 29.)  Assuming for purposes of this motion that Chase increased the interest rate on the note in February 2008, any claims for violations of §§ 392.304(a)(8) and 392.303(a)(2) accrued at that time, and the limitations period expired in February 2010.  *See Laali*, 2013 WL 4456680, at *13.  Because Plaintiff did not file suit until January 22, 2013, her claims based on these allegations are time-barred and fail as a matter of law. *See Bashore v. Bank of Am.*, No. 4:11CV93, 2012 WL 629060, at * 6 (E.D. Tex. Feb. 27, 2012), *rec. adopted*, 2012 WL 1080864 (E.D. Tex. Mar. 30, 2012) (dismissing with prejudice the plaintiff's TDCPA claims because he filed them nearly two years after the limitations expired).

Plaintiff also asserts that the interest rate increase and Chase's denial for loss mitigation resulted in the Property's foreclosure and her threatened eviction.  (doc. 1-8 at 3.)  The substitute trustee's deed attached to the complaint shows that the foreclosure sale took place on October 6, 2009. (*Id.* at 40.)  Assuming that the foreclosure sale constituted a violation of §§ 392.304(a)(8) and 392.303(a)(2), the statute of limitations began to run on that date and expired on October 6, 2011. *See Laali*, 2013 WL 4456680, at *13.  Given Plaintiff's untimely filing, any claims based on the Property's foreclosure, also fail and should be dismissed.  *See Bashore*, 2012 WL 629060, at * 6.

**C.**     **Unreasonable Collection Efforts**

Defendants next contend that Plaintiff fails to state a claim for unreasonable collection efforts because "[d]ebt-collection efforts are tortious when lenders attempt to collect debts that are not actually owed," and in this case "there is and was no dispute that Plaintiff owed money to Defendants."  (doc. 5 at 5.)

While the intentional tort of "unreasonable collection efforts" does not have a precise definition, courts in Texas generally define it as "efforts that amount to a course of harassment that [is] willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012) (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).[6] Generally, "damages for mental anguish unaccompanied by physical injury are recoverable . . . if at all, only as a result of the most egregious abuses in debt collection." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982).

Here, Plaintiff asserts that Chase's "denial of loan counseling and [a] loan modification" constituted unreasonable collection efforts because it resulted in the Property's foreclosure. (doc. 1-8 at 5.)  She requests actual damages and damages for "sever[e] mental anguish, emotional [dis]stress, [and] emotional suffering," claiming that she suffered "humiliation and ridicule in her community." (*Id.* at 6.)  Without more, Plaintiff's allegations could not plausibly entitle her to relief as a matter of law because courts have found that a lender's failure to offer foreclosure alternatives does not constitute unreasonable collection efforts. *See, e.g.*, *Sanghera*, 2012 WL 555155, at *7 (holding that the defendant's foreclosure after having promised not to foreclose and accepted partial payments under a modification plan did "not, as a matter of law, rise to a level of 'efforts that amount to a course of harassment that was willful, wanton, and malicious'") (citation omitted); *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 814–15 (N.D. Tex. 2012) (holding that the defendant's alleged conduct of failing to give the plaintiff the opportunity to reinstate or cure the

---

[6] Noting that "the Texas Supreme Court has never delineated a standard for this tort," the Fifth Circuit has upheld the standard set out in *Jones*. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200, 204–05 (5th Cir. 2012).

default and intentionally misleading and delaying him to the point of foreclosure did not constitute unreasonable collection efforts).

Moreover, courts have also held that "if money is, in fact, owed to the lender, an unreasonable-collection-efforts claim cannot survive even if the plaintiff disputes the amount of that debt." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 624–25 (N.D. Tex. 2011), *aff'd*, 477 Fed. App'x 200 (5th Cir. 2012); *see also Miranda v. Wells Fargo Bank, N.A.*, No. 3:13-CV-2217-L, 2013 WL 3230672, at *2 (N.D. Tex. June 27, 2013) (holding that the lender's foreclosure without giving the plaintiff "a chance to cure the default and reinstate his mortgage" did not amount to unreasonable collection efforts given the plaintiff's admitted default). Here, Plaintiff concedes that she "fell behind" on her payments in 2008 and does not allege or assert any facts showing that she ever cured the default.[7] (*See* doc. 1-8 at 2.)

In conclusion, because Plaintiff's allegations fail to raise a reasonable inference that Chase engaged in unreasonable collection efforts, this claim should be dismissed for failure to state a claim.

## D.   DTPA

Defendants also move to dismiss Plaintiff's claims under the DTPA on grounds that she "is not a consumer" under the Act. (doc. 5 at 6.)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1) (West 2011).

---

[7] Although she alleges and submits "receipts" showing she made payments to the state court for Deutsche's account between September 2011 and February 2012, she does not assert, and there is nothing in the pleadings to indicate, that those payments satisfied the default on the loan.

The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services."   Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."   *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).   Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is generally not a consumer under the DTPA.   *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).   However, a borrower may be a consumer if she seeks to acquire goods or services *with the loan*, and those goods or services form the basis of her complaint.   *Id.* (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Plaintiff conclusorily states that she "was a consumer with[in] the meaning of the DTPA and [her] transaction . . . was a consumer transaction."  (doc. 1-8 at 6.)  She claims "Defendants'" (i.e., Chase's) actions of increasing the interest rate on the note without notice and denying her request for loan counseling and a modification were "unreasonable and [] violated the ordinary standard of care required of mortgage loan servicing compan[ies]" in contravention of §§ 17.45(5)[8] and 17.46(b)(12).[9]  (*Id.* at 3, 6.)  Plaintiff's assertion that she is a "consumer" is a legal conclusion that is not entitled to any deference.  *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff

---

[8]  This section defines "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  Tex. Bus. & Com. Code Ann. § 17.45(5).

[9]  This provision of the DTPA's "laundry list" makes actionable "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."  *Id.* § 17.46 (12).

must provide "more than labels and conclusions").  As to her allegations regarding Chase's conduct, these could not plausibly entitle her to relief because, "[a]lthough one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home, subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA." *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 6 (N.D. Tex. Jan. 20, 2012) (citation omitted).  According to her own complaint, Plaintiff is not a consumer because her objective was not to seek or acquire the Property with a new mortgage from Chase, but rather, to modify her existing loan.  (*See* doc. 1-8 at 3, 6.)  Her DTPA claims therefore fail and should be dismissed.  *See Hurd*, 880 F. Supp. 2d at 765–66.

## E.     Gross Negligence

According to Defendants, "gross negligence" is not an independent cause of action "but rather a form of exemplary damages arising from violations of a tort."  (doc. 5 at 7.)  Because Plaintiff fails to state a plausible claim for unreasonable collection efforts (the only "tort" claim she asserts), Defendants contend that she cannot recover for gross negligence.  (*Id.*)

In Texas, "gross negligence is not a separate cause of action apart from negligence."[10] *RLI Ins. Co. v. Union Pac. R. Co.*, 463 F. Supp. 2d 646, 649–50 (S.D. Tex. 2006) (citing *Prati v. New Prime, Inc.,* 949 S.W.2d 552, 557 (Tex. App.—Amarillo 1997, writ denied)).  "Rather, the degree

---

[10]   The elements of a "negligence" cause of action under Texas law are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 2601526, at *6 (N.D. Tex. July 1, 2011) (citing *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005)). "Gross negligence" has two additional elements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002)); *see also* Tex. Civ. Prac. & Rem. Code § 41.001.

of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *Id.* (citing *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 641 (E.D. Tex. 1997)). "[A] plaintiff cannot recover exemplary damages," however, "until he or she proves an entitlement to actual damages." *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721–22 (Tex. App.—San Antonio 1994, writ denied) (citing cases); *accord Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 648 (E.D. Tex. 1997) ("Recovery of actual damages in tort is necessary to pursue a gross negligence claim.").

Plaintiff alleges that "Defendants" (i.e., Chase) denied her request for a "loan modification and fail[ed] to provide [her with] notice of the interest rate increase." (doc. 1-8 at 7.) Defendants had "actual knowledge" of the "extreme degree of risk . . . of harm" their actions posed, but proceeded with "conscious indifference" of Plaintiff's "rights and welfare." (*Id.*) Defendants' "acts and omissions" "resulted in [the] foreclosure on her home." (*Id.*) These assertions read more like a recitation of the elements of a gross negligence claim than specific allegations of wrongdoing. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555). Ultimately, because Plaintiff does not assert a negligence claim and has failed to plead a plausible claim for unreasonable collection efforts (the only tort claim she does assert), her allegations fail to raise a reasonable inference that she can recover exemplary damages in this action. *See RLI Ins. Co.*, 463 F. Supp. 2d at 649–50; *Riley*, 973 F. Supp. at 648. Her purported claim for gross negligence should be dismissed.

**F.     Suit to Quiet Title and Trespass to Try Title**

Defendants argue that Plaintiff fails to state viable claims for quiet title and trespass to try

title because she fails to cite any legal authority to support her allegation that paying off the secondary loan and obtaining a lien release from the sellers vested her with superior title to the Property.  (doc. 5 at 7–8.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  The plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2000).  This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi

1978, no writ.) (citations omitted).  To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."  *Hurd*, 880 F. Supp. 2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)).  As with a suit to quiet title, the plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title."  *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Plaintiff complains that "Defendants'" "claim to title and possession of the Property" was "improper." (doc. 1-8 at 7.)  She claims to have "an equitable interest in the Property" because she "paid off the second lien" "and obtained a [lien] release" from the sellers.  (*Id.*)  Consequently, she seeks to set aside the foreclosure, or "at the very least," to "recover the amount that she paid" in connection with the secondary loan and improvements she made to the Property.  (*Id.*)

Nevertheless, Plaintiff fails to explain why paying off the secondary loan and obtaining a release from the sellers for this "second and inferior vendor's lien" (doc. 1-8 at 20) vested her with superior title to the Property.  Moreover, while the principal amount of her primary loan was $205,600.00, the substitute trustee sold the Property at foreclosure for only $127,100.00.  (*See id.* at 40.)  Because she does not contend, and nothing in the pleadings indicates, that the principal due on the primary loan had decreased to less than $127,100.00 by the time the Property was foreclosed in October 2009, her allegations fail to state a plausible claim that she was entitled to receive a "reimbursement" from Chase, the foreclosing mortgagee.  *See Grant v. U.S. Dep't of Veterans' Affairs*, 827 F. Supp. 418, 422 (S.D. Tex. 1993), *aff'd sub nom. Grant v. Dep't of Veterans*, 35 F.3d 562 (5th Cir. 1994) ("In Texas, upon a valid foreclosure sale, the mortgagee is entitled to a judgment

against the mortgagor for the amount of the note, interest and attorney's fees, less the amount received at the foreclosure sale and other legitimate credits," and if "the foreclosure sale produces a surplus, the mortgagor is entitled to receive it.") (citations omitted). Her allegations also fail to raise a reasonable inference that she has superior title to the Property vis-à-vis Deutsche, the purchaser at foreclosure. *See id.* at 422 ("Under Texas law, [] the purchaser at a valid foreclosure sale takes full and complete record title, free of all liens, as against the mortgagor of the property.") (citing *Jeffrey v. Bond*, 509 S.W.2d 563, 565 (Tex. 1974); *Corn v. First Texas Joint Stock Land Bank of Houston*, 131 S.W.2d 752, 757 (Tex. Civ. App.—Fort Worth 1939, writ ref'd)).

Given her factually and legally unsupported allegations, Plaintiff fails to state a plausible quiet title claim, and this claim should therefore be dismissed. *See Hurd*, 880 F. Supp. 2d at 767.

## G.      TILA and Regulation Z

Liberally construed, the complaint asserts a claim under TILA and Regulation Z. (*See* doc. 1-8 at 5.) Although Defendants do not expressly address this claim, they argue that Plaintiff's entire complaint should be dismissed because she "fails to state a claim upon which relief can be granted as to any cause of action." (doc. 5 at 9.)

TILA, 15 U.S.C. § 1601 *et seq.*, was enacted as part of the Consumer Credit Protection Act of 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C.A. § 1601(a) (West 2011). Among other things, TILA and Regulation Z, promulgated by the Federal Reserve Board to implement TILA, require lenders to make numerous disclosures to the consumer, including the amount financed, the finance charge, and information regarding debt

cancellation.  *See* 15 U.S.C.A. § 1639(a); 12 C.F.R. §§ 226.1(a), 226.17–18.

The complaint asserts that "Defendants" (i.e., Chase) violated TILA and Regulation Z "by denying Plaintiff['s request for] loan counseling and [a] loan modification."  (doc. 1-8 at 5.)  Notably, Plaintiff does not state how such actions by part of Chase implicate TILA's and Regulation Z's disclosure requirements, and she fails to identify a provision that requires a lender to grant a borrower's request for a loan modification.  Because Plaintiff fails to state a claim under TILA and Regulation Z that is plausible on its face, this claim is also subject to dismissal.

**H.    RESPA**

Plaintiff's allegations also implicate a claim under RESPA.  (*See* doc. 1-8 at 5.)  While not explicitly addressing this claim, Defendants contend that the entire complaint should be dismissed. (doc. 5 at 9.)

RESPA "requires mortgage lenders to clearly and completely disclose settlement costs to borrowers and prohibits predatory practices in the settlement process."  *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011) (citing 12 U.S.C.A. §§  2601(a), 2605–2608 (West 2011)).

According to the complaint, "Defendants" (i.e., Chase) violated RESPA by denying Plaintiff's request for loan counseling and a loan modification.  (doc. 1-8 at 5.)  As with her previous claim, however, Plaintiff fails to specify a RESPA provision that requires a lender to modify a borrower's mortgage upon default.  Without more, Plaintiff fails to state a viable claim under RESPA, and the claim should be dismissed.

**I.    Declaratory Judgment**

Defendants move to dismiss Plaintiff's request for declaratory judgment.  (doc. 5 at 8–9.)

Plaintiff requests a declaration under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Tex. Civ. Prac. & Rem. Code, that she had superior title to the Property "at the time that the loan modification was denied." (doc. 1-8 at 7.) "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one. *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012). The action may nevertheless be construed as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action," however, and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.* Given Plaintiff's failure to state a viable claim for relief against Defendants or show that a genuine controversy exists between the parties, her declaratory judgment action should be dismissed. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where

she had alleged no facts leading to a conclusion that a present controversy existed between her and

the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16,

2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the

plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## J.      <u>Injunctive Relief</u>

Plaintiff seeks to "set aside the foreclosure" and enjoin her eviction from the Property.  (doc.

1-8 at 7–9.)  As noted, according to Defendants, the entire complaint (including any request for

injunctive relief) is subject to dismissal.  (doc. 5 at 9.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a

substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No.

4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp.

v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Because Plaintiff's substantive claims are

subject to dismissal on the merits, she cannot establish any likelihood of success on the merits.  *See

Jackson*, 2011 WL 3874860, at *3.  Accordingly, her request for injunctive relief should be denied.

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro

se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.

Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, C.J.).  Courts

therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be

dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600,

at \*2.   A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.   *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at \* 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at \* 1.   Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.   *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.   *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff amended her complaint in state court before Defendants removed the action to federal court.   (*See* docs. 1-5 and 1-8.)   While her TDCPA claims fail as a matter of law because they are time-barred, her other claims fail because she has not factually pled all of the necessary elements.   Since it does not appear that she has stated her best case with respect to some of her claims, she should be accorded an opportunity to amend her complaint to sufficiently state a claim for relief on those claims other than her TDCPA claims.

## IV.  RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against them should be dismissed with prejudice.   If she timely files an amended complaint, however, Defendants' motion to dismiss should be **GRANTED** as to her TDCPA claims, and **DENIED as moot** as to her remaining claims, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 22nd day of November, 2013.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE